# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 27, 2016 Session


## EARL G. DONALDSON v. TERRI ALLISON DONALDSON


**Appeal from the Circuit Court for Sumner County**
**No. 2014CV9     Joe Thompson, Judge**

_____

**No. M2015-01035-COA-R3-CV – Filed June 30, 2016**
_____


In this divorce action, the trial court awarded alimony *in futuro* to Husband in the amount of $1,450.00 per month. Wife appeals, contending that the findings that Husband had a need for alimony and Wife had the ability to pay, as well as the nature, amount, and duration of the award, are not supported by the record. In making the award, the court did not find that rehabilitative, transitional, or short term alimony was inappropriate, and the findings of fact do not otherwise allow for a review of the award. We vacate the award and remand the case for further consideration of the nature, amount, and duration of the award of alimony.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which W. NEAL MCBRAYER, J. joined. D. MICHAEL SWINEY, JR., C.J., filed a dissenting opinion.

Francis King, Nashville, Tennessee, for the appellant, Terri Allison Donaldson.

William L. Moore, Gallatin, Tennessee, for the appellee, Earl G. Donaldson.


**OPINION**

## I. FACTUAL AND PROCEDURAL HISTORY

Terri Allison Donaldson ("Wife") and Earl G. Donaldson, Jr. ("Husband") were married in March 1988; two children were born of the marriage, both of whom have now reached the age of majority. At the time of trial, Husband was 52 years old and worked as chief dispatcher for a concrete manufacturer; Wife had her Doctorate of Nursing

Practice and was a professor and Director of the Doctor of Nursing Practice Program at Vanderbilt University.

Husband filed for divorce on January 3, 2014, citing irreconcilable differences and seeking spousal support. The parties attended mediation on January 19, 2015, which was unsuccessful. Wife filed her answer and counter complaint on February 5, alleging irreconcilable differences and Husband's inappropriate marital conduct. Husband filed his Amended Complaint for Divorce on March 9, adding an allegation of Wife's inappropriate marital conduct. A trial was held on March 17.

The trial court entered a Memorandum Opinion, which was incorporated into the Final Decree of Divorce. The court declared the parties divorced, divided the marital property, allocated the marital debt, named Wife primary residential parent for the then-minor child, and awarded the Husband $1,450 per month in periodic alimony "until the death of either of the parties, or remarriage of the Husband, whichever occurs first," the payment of which was to be secured by a $250,000 life insurance policy naming Husband as sole beneficiary and remaining in force until Husband is age 65.

Wife appeals the award of alimony *in futuro*, articulating the following issue for our review:

> In this divorce case, did the Trial Court err in requiring the wife to pay alimony *in futuro* of $1,450.00 per month to the husband, a 53-year old man, in good health, who is earning nearly $67,000 a year at a company he has worked for since 2004, and in an industry that he has worked in for more than 25 years, and who, by his own testimony and admission, has current net monthly income that exceeds his current monthly expenses by about $1,6011.52, which leaves him with more disposable income, per month, than the wife?

## II. STANDARD OF REVIEW

Our standard of review of an award of alimony was set forth by the Tennessee Supreme Court in *Gonsewski v. Gonsewski:*

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew [v. Burlew],* 40 S.W.3d [465] at 470 [(Tenn. 2001)]; *Robertson v. Robertson,* 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision."

*Kinard,* 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn.2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson,* 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson,* 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn.2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright,* 337 S.W.3d at 176; *Henderson,* 318 S.W.3d at 335.

350 S.W.3d 99, 105-06 (Tenn. 2011)(footnote omitted).

### III. ANALYSIS

Tennessee recognizes four distinct types of spousal support: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1). Alimony *in futuro*, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. Alimony *in solido* is also "a form of long-term support," *id.* at 108, and "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5). Rehabilitative alimony is "a separate class of spousal support," Tenn. Code Ann. § 36–5–121(e)(1), the purpose of which is "to assist an economically disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse." *Gonsewski*, 350 S.W.3d at 108. Finally, transitional alimony may be awarded "when the court finds that

3

rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded." Tenn. Code Ann. § 36-5-121(g)(1).

In this case, the court awarded alimony *in futuro*, which is "a payment of support and maintenance on a long term basis or until death or remarriage of the recipient." Tenn. Code Ann. § 36-5-121(f)(1). An award of this type of alimony is permissible:

> . . . when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

*Id.* "[T]here is a statutory bias toward awarding transitional or rehabilitative alimony over alimony *in solido* or *in futuro*. While this statutory preference does not entirely displace long-term spousal support, alimony *in futuro* should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary." *Gonsewski*, 350 S.W.3d at 109 (citing *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004); *Robertson v. Robertson,* 76 S.W.3d 337, 341–42 (Tenn. 2002)).

In determining whether to award spousal support, the trial court is required to consider "all relevant factors," including:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

4

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). "While a trial court should consider all the relevant factors under the circumstances, the two most important factors to be considered are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay." *Small v. Small*, No. M2009-00248-COA-R3-CV, 2010 WL 334637, at *3 (Tenn. Ct. App. Jan. 28, 2010) (citing *Riggs v. Riggs,* 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)). Of these two factors, "the primary consideration is the disadvantaged spouse's need." *Id.*

In the memorandum opinion, the court stated that it "g[ave] weight" to six of the statutory factors, specifically to factors (1), (2), (3), (8), (9), and (10) in awarding the alimony. The court made the following findings in that regard:

1. The parties were married on March 12, 1988 and separated after almost twenty-six years, on January 3, 2014.

2. The Wife is 52 years old and the Husband is 53 years old. Both parties are in relatively good health.

3. The Wife has a doctorate in nursing practice. When the parties married, Wife held a bachelor's degree and obtained her master's degree and doctorate during the course of the marriage. The wife's career has been marked by steady advancement . . . Her current salary from this employment is approximately $112,000 annually. . . . In addition, Wife has historically supplemented her income with outside professional employment. These amounts range from approximately $5,000 to $12,000 per year. The Court finds that while the method of income supplementation may vary, it is most probable that Wife will continue to supplement her income on a regular basis.

5

4. The Husband did not complete his high school education but did pass the General Educational Development (GED) test. After serving four years in the United States Navy, the Husband began working in the concrete industry where he has remained for most of his working career. His most recent pay history reveals that he earned approximately $67,000 in 2014 — just over half of Wife's historical earnings. The court finds the testimony of Chris Tuck, Sales Manager at Husband's employer credible. Husband works in a family held concrete business and his opportunities for advancement are limited.

5. The parties lived beyond their means, though not extravagantly, during their marriage. Despite the fact that the parties' combined gross incomes exceeded $150,000 annually the parties were using cash advance/payday loan companies to make ends meet. The parties were living paycheck to paycheck. Both parties agreed that they communicated poorly with respect to financial affairs.

6. Both parties contributed to the marriage by working outside the home and parenting the parties' two minor children. It is just as clear, however, that the contributions of the parties were significantly different. As is the case with many marriages, one spouse's career overshadowed the other. The parties chose to move from Atlanta (the city where they were married) to Hendersonville because Wife obtained a job at Nashville Memorial Hospital. The evidence at trial established that Wife had clear career goals and pursued those goals with the assistance of Husband. That assistance took various forms: increased childcare responsibility, homemaking activities, and employment concessions. In short the parties['] mutual understanding — both explicit and implicit — was that the Wife's career would take precedence over that of Husband.

7. Since the parties' separation, the Wife has enjoyed a higher standard of living than Husband. The Husband has been living in a two-bedroom apartment, while the Wife has rented a four-bedroom home. A comparison of the parties' income and expense statements also reveals that the Wife has significantly greater resources to meet her monthly needs. While Father's income is not insignificant, he has been unable to amass any significant savings for retirement, unlike Wife.

\*\*\*

Given the disparity in earning capabilities between the Husband and

the Wife, the Court finds that the Husband is at an economic disadvantage and has a need for alimony. The Wife has the ability to pay alimony. The Court takes the allocation of marital property and debt into account in making the following award of alimony.

Wife challenges the award of alimony *in futuro* as having no "factual basis . . . other than the fact that there was a disparity of earnings between the parties." Husband contends that due to his age, lack of education beyond a GED, and no potential for advancement in the concrete industry, "it is clear that . . . Husband cannot be rehabilitated and the Trial Court did not abuse its discretion in awarding Husband alimony *in futuro* in the amount of $1,450 a month."

We have determined that the trial court has not made adequate findings relative to the determination that Husband has a need for alimony and that Wife has the ability to pay; that rehabilitative, transitional, or other short-term alimony is not feasible; or that Husband required long-term support. Moreover, we fail to see the factual basis of an award of $1,450 per month when Husband's testimony did not account for an excess of approximately $1,300 per month, and Wife's testimony showed an excess of approximately $400. In the absence of such findings, we are unable to afford the trial court's decision the deference normally afforded to such decisions.

For the foregoing reasons, we vacate the award of $1,450 per month in alimony *in futuro* and remand for reconsideration of the type, duration and amount of alimony, if any, to be awarded. The trial court should make factual findings as to Husband's need for alimony and Wife's ability to pay; mindful of the "statutory bias toward awarding transitional or rehabilitative alimony over alimony *in solido* or *in futuro*," *Gonsewski*, 350 S.W.3d at 109, the court should make findings as to whether rehabilitation of Husband is feasible, and if not, whether an award of transitional alimony is appropriate; if the court finds that transitional alimony is not appropriate, the court should then consider the nature and duration of long-term support. We leave to the court's discretion whether the parties should be permitted to introduce additional proof relative to these matters in light of the passage of time since entry of the decree and our disposition of this appeal.

Wife also appeals the requirement that she maintain an insurance policy to secure the alimony award; we vacate this requirement, as well.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court awarding alimony is vacated and the case is remanded for further proceedings consistent with this opinion.

_____

RICHARD H. DINKINS, JUDGE